```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```
───────────────────────────────

```
UP STATE TOWER CO., LLC,

              Plaintiff,                    DECISION and ORDER
      -vs-                                  No. 1:16-cv-00069-MAT

THE TOWN OF KIANTONE, NEW YORK; THE
TOWN BOARD OF THE TOWN OF KIANTONE,
NEW YORK; and THE BUILDING
DEPARTMENT OF THE TOWN OF KIANTONE,
NEW YORK,

              Defendants.
```
───────────────────────────────

## INTRODUCTION

Presently before the Court are the Motion for Summary Judgment filed by the Town of Kiantone, the Town Board of the Town of Kiantone, and the Building Department of the Town of Kiantone (collectively, "Defendants"), and the Cross-Motion for Summary Judgment filed by Up State Tower Co., LLC ("Plaintiff"). Both involve Plaintiff's application before the Town of Kiantone for permission to install a cell phone tower. For the reasons discussed below, Defendants' motion is granted in part and denied in part, and Plaintiff's motion is granted in part and denied in part.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff develops and builds telecommunications facilities on behalf of Blue Wireless, a telecommunications carrier licensed by the Federal Communications Commission ("FCC") to operate in the Jamestown, New York area, including the Town of Kiantone ("the

Town"), a municipal corporation in Chatauqua County, New York. The Town Board is the governmental body of the Town of Kiantone.[1]

On July 30, 2015, Plaintiff submitted a Tower Permit Application ("the Application") seeking permission to construct a wireless telecommunications tower at 1710 Foote Avenue, in Jamestown, New York. The Application included Applications for Building and Zoning Permit, Special Use Permit, and Area Variance; a Letter of Intent; a Full Environmental Assessment Form ("EAF"); a State Environmental Quality Review Visual EAF Addendum; Site Plan drawings and specifications; and Owner Authorization Letter.

The Town Board held a hearing on the Application on August 13, 2015. At that time, Plaintiff was advised that the Town of Kiantone Telecommunications Facilities Law ("KTFL") required the Town to submit the Application to the Town of Kiantone Planning Board ("Town Planning Board") and the Chatauqua County Planning Board for review and comment.

The Town Planning Board heard the Application on August 31, 2015, and noted that because the Foote Avenue site was so small, at least five variances would be required. Finding that number excessive, the Town Planning Board recommended that Plaintiff investigate other sites within the three-mile search ring to find

---

[1] Pursuant to Western District of New York Local Rule of Civil Procedure 56, both parties filed statements of fact and responses to the other party's statements of fact. In the factual summary below, the Court will identify those facts that the parties dispute.

another suitable site that might require fewer variances, even if the site were not in a commercial zone.[2]

The Chatauqua County Planning Board submitted its report and recommendations to the Town Board by letter dated September 9, 2015, noting that, in its opinion, the Foote Avenue site was more than minimally intrusive of local zoning laws than other viable sites. The Town Board forwarded its report and that of the Chatauqua County Planning Board to Plaintiff on September 10, 2015.

The Town Board scheduled a hearing on the Application for October 1, 2015. Plaintiff's attorney, Daniel Brennan, Esq., in an email to the Town's attorney, Paul Webb, Esq., requested an adjournment of the Application, as Plaintiff was negotiating with an individual property owner regarding another location, situated on 87 acres to the west side of Foote Avenue. By letter dated October 1, 2015, the Town granted the request for an adjournment and confirmed that no action would be taken on the Application at the October meeting.

At the Town Board meeting on November 5, 2015, Plaintiff advised that it had not completed its investigation of 19 additional sites, and requested an adjournment of the Application until the December meeting.

---

[2] Because the Town Code specifically prohibits the use of residentially zoned areas for cell-tower siting (Compl., Ex. 12 § 29.6B), Plaintiff would be required to apply for and obtain a use variance in order to site a tower in a residential area.

At the December 10, 2015 Town Board meeting, Plaintiff presented a new Supplemental Site Selection and Justification Report covering 19 new locations. Plaintiff's attorney advised that of the approximately 19 additional sites investigated, none of them were suitable; the only suitable site was the one for which the Application had been made, i.e., the Foote Avenue site. Plaintiff requested that the Town render a decision on its application by December 28, 2015, contending that this was the last day under the FCC's so-called "Shot Clock Order"[3] to act. The Town advised Plaintiff that in its view, the 150 days allowed in the Shot Clock Order had been tolled for 71 days as a result of adjournments requested by Plaintiff, thereby extending the Town's time to act until March 7, 2016.

By letter dated December 16, 2015, the Town's attorney advised Plaintiff that the Town would review the Application regarding the original site. The Town noted that it was planning on retaining a consultant, Richard Comi ("Comi"), and requested that Plaintiff deposit $8,500 into an escrow account to pay for Comi's fees. In a letter dated December 23, 2015, Plaintiff's attorney reminded the Town Attorney that the Shot Clock had not been extended and would expire on December 28, 2015.

---

[3] *In re: Petition for Declaratory Ruling to Clarify Provisions of Section 332(c)(7)(B) to Ensure Timely Siting Review and to Preempt Under Section 253 State and Local Ordinances that Classify All Wireless Siting Proposals as Requiring a Variance,* 24 F.C.C. Rcd. 13994, 14013 (2009).

On December 28, 2015, the Town's attorney requested, via email, that Plaintiff call Comi to set up a site visit.

On December 29, 2015, Comi called Plaintiff's attorney regarding a site visit; later the same day, he confirmed the request via email.

Also on December 29, 2015, the Town's attorney sent an email to Plaintiff's attorney indicating that Plaintiff had not submitted a lease for the Foote Avenue site, and therefore the Application was incomplete. In addition, the Town's attorney stated that Plaintiff had failed to provide certain information regarding the proposed tower's "fall zone" as required by KTFL § 29.8(F).

The Town did not render a decision on the Application by March 7, 2016, the date the Town contended marked the end of the time-period specified under the Shot Clock Order.

On January 28, 2016, Plaintiff filed its Complaint in this Court, raising two causes of action: (1) unreasonable delay and failure to act on Plaintiff's Application in violation of 47 U.S.C. § 332(c)(7)(B)(ii), and the FCC's Shot Clock Order; and (2) the failure to act constitutes an effective prohibition on the provision of wireless services in violation of 47 U.S.C. § 332(c)(7)(B)(i)(II). In the Complaint, Plaintiff seeks declaratory and injunctive relief, as well as damages in the form of costs, disbursements, and reasonable attorney's fees as permitted by law. With particular regard to the equitable relief

sought, Plaintiff requests an order from this Court declaring that the failure of Defendants to act on the Application within a reasonable time constitutes a violation of 47 U.S.C. §332(c)(7)(B)(ii); declaring that the failure of the Defendants to act on the Application within a reasonable time pursuant to Shot Clock Order constitutes a violation of the Shot Clock Order and amounts to unreasonable delay in violation of 47 U.S.C. §332(c)(7)(B)(ii); declaring that the requirement for a Town Tower Permit under KTFL § 29.7A is beyond the authority of the Town to adopt and is therefore void as ultra vires, or, in the alternative, declaring that the Town Tower Permit under KTFL § 29.7A constitutes a Special Use Permit and that Plaintiff has satisfied its requirements; and enjoining Defendants to issue all approvals and permits required to allow construction and operation of the proposed wireless telecommunications tower described in the Application.

Defendants answered the Complaint on February 19, 2016.

A mediation session was held on April 28, 2016, but the parties could not reach an agreement.

Defendants filed their First Motion for Summary Judgment (Dkt #11) on May 12, 2016. Plaintiff filed its Cross-Motion for Summary Judgment on June 8, 2016 (Dkt ##12, 13). Defendants filed a Memorandum in Opposition to the Cross-Motion (Dkt #14) on

June 28, 2016. Plaintiff filed a Reply (Dkt #15) in response to Defendants' motion on June 12, 2016.

The matter was transferred to the undersigned on November 18, 2016 (Dkt #16). For the reasons discussed below, Plaintiff's Cross-Motion for Summary Judgment is granted in part and denied in part, and Defendants' First Motion for Summary Judgment is granted in part and denied in part.

### SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is deemed "material" for these purposes "if it might affect the outcome of the suit under the governing law." Holtz v. Rockefeller & Co., 258 F.3d 62, 69 (2d Cir. 2001) (citation omitted). A factual issue is "genuine" if "a reasonable jury" could find in favor of the nonmoving party based on that fact. Id. (citation omitted). The initial burden of establishing the absence of any genuine issue of material fact falls on the movant; after that, the burden shifts to the nonmovant to establish the existence of a factual question requiring resolution at trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). At the summary judgment stage, "courts are required to view the facts and draw reasonable inferences 'in the light most favorable to the party

opposing the [summary judgment] motion." Scott v. Harris, 550 U.S. 372, 378 (2007) (quotation and citation omitted). "[T]he fact that both parties have moved for summary judgment does not mean that the Court must grant summary judgment for one of the parties, and it does not change the burden on the moving party to show the absence of a genuine issue of fact." Wagner v. Cty. of Cattaraugus, 866 F. Supp. 709, 714 (W.D.N.Y. 1994) (citing Eastman Mach. Co. v. United States, 841 F.2d 469, 473 (2d Cir. 1988) ("The fact that both sides move for summary judgment does not guarantee that there is no material issue of fact to be tried.") (citation omitted)).

## DISCUSSION

### I. Overview of the Telecommunications Act of 1996

The Telecommunications Act of 1996 ("TCA"), codified at 47 U.S.C. § 151 et seq., has been described as "an omnibus overhaul of the federal regulation of communications companies," Sprint Spectrum L.P. v. Willoth, 176 F.3d 630, 637 (2d Cir. 1999), intended "'to provide for a pro-competitive, de-regulatory national policy framework designed to accelerate rapidly private sector deployment of advanced telecommunications and information technologies and services . . . .'" Id. (quoting H.R. Conf. Rep. No. 104-458, at 113 (1996); other citation omitted). To these ends, the TCA limits the state and local government's authority to deny construction of wireless telecommunications towers, see 47 U.S.C. § 332(c)(7)(B)(i), and prescribes how such decisions must be made,

see id. § 332(c)(7)(B)(ii)-(iv). See also, e.g., Willoth, 176 F.3d at 637 (footnote omitted). "Although the TCA preserves local zoning authority in all other respects over the siting of wireless facilities, [47 U.S.C.] § 332(c)(7)(A), 'the method by which siting decisions are made is now subject to judicial oversight.'" Willoth, 176 F.3d at 637 (quoting Cellular Tel. Co. v. Town of Oyster Bay, 166 F.3d 490, 492 (2d Cir. 1999)).

At issue in this case are two limitations imposed by the TCA, one substantive and one procedural. First, the TCA procedurally requires that any request to place, construct, or modify personal wireless service facilities must be acted upon by local governing authority "within a reasonable period of time after request is duly filed[,]" 47 U.S.C. § 332(c)(7)(B)(ii). Second, the TCA substantively provides that no state or local law may prohibit or have the effect of prohibiting "the provision of personal wireless services." 47 U.S.C. § 332(c)(7)(B)(i)(II).

As far as remedies, the TCA allows "[a]ny person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof that is inconsistent with this subparagraph" to, "within 30 days after such action or failure to act, commence an action in any court of competent jurisdiction." 47 U.S.C. § 332(c)(7)(B)(v).

## II. The Claim that the Town Failed to Act "Within a Reasonable Period" in Violation of Section 332(c)(7)(B)(ii)

### A. The Shot Clock Order

"In recognition of the ambiguity as to what constitutes a 'reasonable period of time' under Section 332(c)(7)(B)(ii), and '[t]o provide guidance, remove uncertainty and encourage the expeditious deployment of wireless broadband services,' the FCC—upon the petition of wireless providers—issued its Shot Clock Order in 2009." Crown Castle NG E. Inc. v. Town of Greenburgh, N.Y., No. 12-CV-6157 CS, 2013 WL 3357169, at *13 (S.D.N.Y. July 3, 2013) (citing Shot Clock Order, 24 F.C.C. Rcd. at 14005), aff'd, 552 F. App'x 47 (2d Cir. 2014). In the Shot Clock Order,

> the FCC declared that "a reasonable period of time" for purposes of § 332(c)(7)(B)(ii) presumptively would be 90 days for personal wireless service facility siting applications requesting collocations and 150 days for all other applications. The FCC further determined that a lack of decision within these time frames would constitute a failure to act under § 332(c)(7)(B)(v). . . .

City of Arlington, Tex. v. F.C.C., 668 F.3d 229, 235–36 & nn. 9-11 (5th Cir. 2012) (citing Shot Clock Order, 24 F.C.C. Rcd. 13994, 14004-05 (2009)); see also id. at 256 (holding that the FCC's interpretation of the "reasonable period of time" language was entitled to Chevron deference as a permissible construction of an ambiguous statute). The Shot Clock Order thus "creat[es] a presumption that a state or local government that fails to act on

a zoning application within the applicable 90- or 150-day time frame has 'failed to act' under § 332(c)(7)(B)(v)." Id. at 256.

However, the FCC recognized that there are certain circumstances under which the Shot Clock's time-periods could be tolled or extended. First, personal wireless service providers and state or local governments can, "by mutual consent, extend the prescribed time frames." City of Arlington, 668 F.3d at 235 & n.12 (citing 24 F.C.C. Rcd. at 14013)). Second, if a provider's application is incomplete, the time it takes for the provider to respond to a state or local government's request for additional information will not count toward the 90- or 150-day time frame, but only if the state or local government has notified the applicant, within 30 days of receiving the application, that the application was incomplete. Id. & n. 13 (citing 24 F.C.C. Rcd. at 14015).

Here, the parties agree that the applicable time-period is 150 days, which is measured from the date the application was filed, July 30, 2015. Thus, under the Shot Clock Order, the Town had until December 28, 2015, to act on Plaintiff's Application. To date, however, the Town has not issued any decision, favorable or unfavorable, on Plaintiff's Application. Accordingly, the Court must determine whether the Town has rebutted the presumption of reasonableness.

**B.     Whether the Presumption Has Been Rebutted**

**1.     No Extension of the Shot Clock by Mutual Agreement**

The Town argues that the Shot Clock was extended by mutual agreement because Plaintiff's Application was placed on the agendas for the October 2015, and November 2015, Town Board meetings, yet Plaintiff requested adjournments of these meetings. Defendants cite no caselaw supporting the proposition that adjournments, in and of themselves, extend the Shot Clock. To the contrary, in a case out of the Western District of New York, requests by the applicant for adjournments of public hearings were not found to have been tantamount to a mutual agreement to extend the Shot Clock. See, e.g., Bell Atl. Mobile of Rochester L.P. v. Town of Irondequoit, N.Y., 848 F. Supp. 2d 391, 397, 400 (W.D.N.Y. 2012).

Furthermore, the record contains documentary evidence establishing that Plaintiff placed Defendants on notice prior to December 28, 2015, that, in its view, the Shot Clock was still running. First, the minutes from the December 10, 2015 Town Board meeting reflect that "Mr. Brennan[, counsel for Plaintiff,] again presented the Federal Mandated 'Shock [sic] Clock' of 150 days from original application, to which Town Attorney Paul Webb rebutted. It was determined that the Town would indeed need to investigate this matter further for the best interest of the town residents. . . ." (Def's Ex. H (Dkt #11-36)).

Second, in response to the Town Attorney's letter dated December 16, 2015, counsel for Plaintiff wrote,

> As instructed by the Planning Board, we [Up State Tower] continued to investigate additional sites, including sites that were clearly prohibited by the [Town's] Telecommunications Law. We requested an adjournment from the October 1, 2015 Town Board [hearing] so that we could continue the requested site selection search. *We never requested or agreed to an extension of the [S]hot [C]lock*.

(Compl., Ex. 14 (Dkt #1-1), p. 3 (emphasis supplied).

The Court finds that there is no genuine issue of material fact to be tried on the issue of whether the parties mutually consented to extend the Shot Clock. The record establishes that they did not.

**2. No Extension of the Shot Clock by Notice of Incomplete Application**

Here, the Town Attorney, in his letter dated December 16, 2015, to Plaintiff, advised that "[t]he [T]own *will notify* [Plaintiff] of additional information that the [T]own or [its] consultant feel is lacking from the [A]pplication or is needed in order to properly evaluate the application." (Compl., Ex. 13 (Dkt #1-1), p. 4) (emphasis supplied). First, this purported notice letter was not provided within 30 days of the date the Application was filed, as required by the Shot Clock Order. Second, the letter does not actually notify Plaintiff as to how its Application is incomplete; rather, it states that notice regarding incompleteness may be forthcoming.

Furthermore, in City of Arlington, 668 F.3d 229, the Fifth Circuit recognized that "a state or local government that confronted an incomplete application, but delayed alerting the applicant to the deficiencies in the application, should be presumed to have acted unreasonably if the government ultimately did not act on the application within the time frames [of the Shot Clock Order]." Id. at 257-58.  Here, the Town did not act on the Application within the Shot Clock time-period; indeed, to date, the Town has not acted on the Application at all.

The Court finds that there is no genuine issue of material fact to be tried on the issue of whether the Shot Clock was extended based on timely-given notice of incompleteness. The record establishes it was not.

**D.   Remedy**

Having found a violation of Section 332(c)(7)(B)(ii), the Court must determine what the proper equitable relief is. The FCC has declared that a "local authority's exceeding a reasonable time for action would not, in and of itself, entitle the siting applicant to an injunction granting the application." Shot Clock Order, 24 F.C.C. Rcd. at 14005 n. 99. Rather, "'the only reasonable [equitable] relief for such a failure [would be] to require a written decision.'" Crown Castle NG E. Inc. v. Town of Greenburgh, N.Y., No. 12-CV-6157 CS, 2013 WL 3357169, at *17 (S.D.N.Y. July 3, 2013) (holding that because municipality issued a written denial of

wireless service provider's application, claim for injunctive relief for violation of Section 332(c)(7)(B)(ii) was moot) (quoting Clear Wireless, LLC v. City of Wilmington, No. 10-CV-218, 2010 WL 3463729, at *4 (D. Del. Aug. 30, 2010); citations omitted).

### III. The Claim that the Town Effectively Prohibited the Provision of Wireless Services in Violation of 47 U.S.C. § 332(c)(7)(B)(i)(II)

The Complaint's second cause of action is premised upon the Town's failure to act, which Plaintiff asserts constitutes an effective prohibition on wireless service under the TCA because it essentially denies Plaintiff the ability to close a significant gap in its coverage using the least intrusive means possible, thereby violating 47 U.S.C. § 332(c)(7)(B)(i)(II). Plaintiff asserts that this constitutes a violation of federal law independent of the allegations stated in the first cause of action, and supports the issuance of injunctive relief.

As discussed further below, the Court finds that it cannot grant Plaintiff injunctive relief because claims for effective prohibition and lack of substantial evidence under the TCA require as a precondition that the Town have denied Plaintiff's Application. Here, as the parties admit, the Town has not yet issued a decision on Plaintiff's Application. See, e.g., New Cingular Wireless PCS, LLC v. Town of Stoddard, N.H., 853 F. Supp. 2d 198, 200 (D. N.H. 2012) ("Because . . . claims for effective prohibition and lack of substantial evidence cannot lie unless a

local government has denied the plaintiff's application, and the Board has not done so here, the motion to dismiss those claims is granted."). The Court recognizes that Plaintiff is not bringing a cause of action under the "substantial evidence" provision, 47 U.S.C. § 332(c)(7)(B)(iii), which on its face requires that the local government make a "decision . . . to deny" the application. A number of courts, including several courts in this Circuit, have ruled that when the wireless service provider's application has not been denied, a claim under § 332(c)(7)(B)(iii) does not lie. New Cingular Wireless PCS, LLC, 853 F. Supp.2d at 207 (citing N.Y. SMSA Ltd. P'ship v. Town of Riverhead, 45 F. App'x 24, 27 (2d Cir. 2002); Masterpage Commc'ns, Inc. v. Town of Olive, 418 F. Supp.2d 66, 80–81 (N.D.N.Y. 2005); Nextel Partners of Upstate N.Y., Inc. v. Town of Canaan, 62 F. Supp.2d 691, 697 (N.D.N.Y. 1999)). Although the language of the "effective prohibition" provision at issue here, 47 U.S.C. § 332(c)(7)(B)(i)(II), is "not nearly as clear on its face," New Cingular Wireless PCS, LLC, 853 F. Supp.2d at 207, the First Circuit "has read it to require a showing that, inter alia, the plaintiff's application was denied." Id. (citing Town of Amherst v. Omnipoint Commc'ns Enters., Inc., 173 F.3d 9, 14 (1st Cir. 1999) ("If the criteria or their administration effectively preclude towers no matter what the carrier does, they may amount to a ban 'in effect' even though substantial evidence will almost certainly exist for the denial. In that event, the regulation is

unlawful under the statute's 'effect[ive prohibition]' provision. But the burden for the carrier invoking this provision is a heavy one: to show from language or circumstances not just that this application has been rejected but that further reasonable efforts are so likely to be fruitless that it is a waste of time even to try.") (internal citation omitted)); see also Glob. Tower Assets, LLC v. Town of Rome, Me., No. 1:14-CV-00085-GZS, 2014 WL 3784233, at *10 (D. Me. July 31, 2014) (dismissing without prejudice cause of action under, inter alia, § 332(c)(7)(B)(i)(II), as not ripe for review because there had been no "final action," even though the plaintiff had received an unfavorable decision from the town's planning board but had failed to pursue an available appeal to the town board of appeals), aff'd sub nom. Glob. Tower Assets, LLC v. Town of Rome, 810 F.3d 77 (1st Cir. 2016); Cox Commc'ns PCS, L.P. v. City of San Marcos, 204 F. Supp.2d 1272, 1277 (S.D. Cal. 2002) ("[B]ecause the defendants have not rejected Sprint's application for an excavation permit or a CUP, they have not taken any final action. Because no decision or final action has been made on Sprint's request, the company has failed to state a cause of action under §§ 332(c)(7)(B)(i)(I) and 332(c)(7)(B)(i)(II).").

Plaintiff suggests that although the Town never denied the Application outright, the Town's failure to act constituted a "functional" denial of the Application. The Court does not find that the present circumstances amount a functional or de facto

denial of the Application. The Town has not informed Plaintiff that no further action would be taken on the Application or that it would need to submit a new application. See New Cingular Wireless PCS, LLC, 853 F. Supp.2d at 208 ("[T]he Board never informed New Cingular that no further action would be taken on its application or that it would need to submit a new application. In fact, in granting rehearing, it indicated just the contrary—that further action would be taken on New Cingular's original application.") (emphasis in original). There is also the implication that further review by the Town Board would be expensive, inefficient, time-consuming, and ultimately futile. However, "'impracticalities, time delays, expense and other inefficiencies'" does not amount to "harm . . . sufficiently strong to outweigh the unfitness for review embodied in the ripeness doctrine." Sprint Spectrum L.P. v. City of Carmel, Indiana, 361 F.3d 998, 1004-05 (7th Cir. 2004) (citation omitted). Moreover, the possibility remains that the Town may approve the Application. "As the Supreme Court has recognized, local zoning authorities are flexible institutions that may give back with one hand what they have taken with the other." Id. at 1004 (citing MacDonald, Sommer & Frates v. Yolo Cty., 477 U.S. 340, 350 (1986)). For the reasons discussed above, the Court dismisses Plaintiff's second cause of action without prejudice, with leave to renew.

**CONCLUSION**

For the foregoing reasons, Plaintiff's Cross-Motion for Summary Judgment (Dkt #12) is granted in part and denied in part, and Defendants' First Motion for Summary Judgment (Dkt #11) is granted in part and denied in part. Specifically, the Court grants summary judgment in Plaintiff's favor as to the first cause of action, and denies summary judgment to Defendants as to the first cause of action. Defendants are hereby ordered to render a decision on the Application within twenty (20) days of this Decision and Order.

The Court grants summary judgment in Defendants' favor with regard to the second cause of action, to the extent that the second cause of action is dismissed without prejudice with leave to renew. The Court denies summary judgment in Plaintiff's favor on the second cause of action, to the extent that Plaintiff seeks injunctive and declaratory relief based on this claim.

The Clerk of Court is directed to close this case.

**SO ORDERED.**

**S/Michael A. Telesca**

HON. MICHAEL A. TELESCA
United States District Judge

Dated:   December 9, 2016
         Rochester, New York.