UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UP STATE TOWER CO., LLC,

        Plaintiff,

  -vs-

THE TOWN OF KIANTONE, NEW YORK; THE
TOWN BOARD OF THE TOWN OF KIANTONE,
NEW YORK; and THE BUILDING
DEPARTMENT OF THE TOWN OF KIANTONE,
NEW YORK,

        Defendants.

**DECISION and ORDER
No. 1:16-cv-00069-MAT**

---

## INTRODUCTION

Up State Tower Co., LLC ("Plaintiff") commenced this action against the Town of Kiantone, the Town Board of the Town of Kiantone and the Building Department of the Town of Kiantone (collectively, "Defendants") alleging that Defendants violated the Telecommunications Act of 1996 ("TCA"), Pub. L. No. 104-104, 110 Stat. 56 (codified at 47 U.S.C. § 151 et seq., as amended), in denying its application for a special use permit to construct a public utility wireless telecommunication facility. Presently before the Court is Defendants' Motion for Reconsideration.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff develops and builds telecommunications facilities on behalf of Blue Wireless, a telecommunications carrier licensed by the Federal Communications Commission ("FCC") to operate in the Jamestown, New York area, including the Town of Kiantone ("the

Town"). The Town is a municipal corporation in Chatauqua County, New York. The Town Board of the Town of Kiantone ("the Board") is the Town's governmental body.

At issue in this litigation is Plaintiff's Tower Permit Application ("the Application") dated July 30, 2015, seeking permission to construct a wireless telecommunications tower at 1710 Foote Avenue, in Jamestown, New York ("the Proposed Site").

On December 9, 2016, this Court issued a Decision and Order granting Plaintiff's motion for summary judgment on as to its first cause of action and ordered, as a remedy, that the Town issue a written decision on the Application within 20 days.

On December 19, 2016, the Board issued a "Resolution Denying the Application of Up State Tower Co., LLC For Town Tower Permit, Area Variances and Site Plan Review" ("the Resolution") (Dkt #39-3). After making a number of factual findings, see id. ¶¶ 1-61, the Board offered several reasons for denying Plaintiff's Application, including that Plaintiff "failed to establish that its proposed facility is the least intrusive means to close Blue Wireless' gap in wireless coverage or that a tower at this location and height is needed to solve Blue Wireless' alleged gap in wireless coverage[.]" Resolution (Dkt #39-3) at 13.

On January 9, 2017, Plaintiff filed a motion to reconsider this Court's December 9, 2016 decision. After the Court issued a Decision and Order denying reconsideration on March 31, 2017,

Plaintiff filed a notice of interlocutory appeal as to the December 2016 and March 2017 decisions. The United States Court of Appeals for the Second Circuit affirmed both decisions on December 27, 2017.

Defendants filed a Second Motion for Summary Judgment (Dkt ##39 to 39-20) asserting entitlement to judgment as a matter of law on Count V of the Amended Complaint (Dkt #24), which alleges that the denial of the Application violated 47 U.S.C. § 332(c)(7)(B)(iii) because it is unsupported by "substantial evidence." Plaintiff has opposed the motion (Dkt ##42 to 42-5), and Defendants have filed a Reply (Dkt #43). The motion was submitted without oral argument on November 27, 2018 (Dkt #44). On February 15, 2019, Plaintiff filed a Response (Dkt #45) presenting supplemental authority[1] in further support of its opposition.

The supplemental authority consisted of a Declaratory Ruling and Third Report and Order ("FCC Order") adopted by the Federal Communications Commission ("FCC") on September 26, 2018, and effective January 14, 2019. Plaintiff noted that the FCC clarified the interpretation of what constitutes "an effective prohibition" of wireless service for purposes of an "effective prohibition" claim under 47 U.S.C. § 332(c)(7)(B)(i)(II). Defendants did not

---

[1] The FCC Order is entitled In the Matter of Accelerating Wireless Broadband Deployment by Removing Barriers to Infrastructure Investment, WT Dkt. No. 17-79 and WC Docket No. 17-84, FCC 18-133, available at https://www.fcc.gov/document/fcc-facilitates-wireless-infrastructure-deployment-5g.

respond to Plaintiff's submission of the FCC Order. Defendants also did not move for summary judgment on Plaintiff's effective prohibition claim. The Court found that it was unclear whether the FCC Order applied to the Resolution issued in December 2016, and thus determined it was not dispositive of Defendants' summary judgment motion.

In a Decision and Order (Dkt #46) dated March 11, 2019, the Court denied Defendants' motion for summary judgment as to Count V, finding that the Board's Resolution denying Plaintiff's Application was not supported by substantial evidence. Accordingly, the Court determined, Defendants were not entitled to summary judgment with respect to Count V of the Amended Complaint. As a remedy, the Court vacated the Board's Resolution denying the Application and directed Defendants to promptly approve the Application and grant and issue all required variances to Plaintiff. Judgment in Plaintiff's favor (Dkt #47) was entered on March 12, 2019.

On April 2, 2019, Defendants filed their First Motion for Reconsideration (Dkt ##49 to 49-4). On April 15, 2019, Defendants filed their First Motion to Stay the Judgment (Docket ## 50, 51). By order dated April 16, 2019 (Dkt #52), the Court granted Defendants' request to stay its obligation to issue the cell tower permit until such time as the Court decided their reconsideration motion. On April 17, 2019, the Court granted Plaintiff's request for an extension of time to respond to the reconsideration motion.

Plaintiff filed its Memorandum in Opposition (Dkt #56) on April 24, 2019. Defendants did not submit any reply papers.

**DEFENDANTS' MOTION FOR RECONSIDERATION**

**I.  Standard on Reconsideration**

The standard for granting a motion for reconsideration under Federal Rule of Civil Procedure ("F.R.C.P.") 59(e) "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995) (citing Schonberger v. Serchuk, 742 F. Supp. 108, 119 (S.D.N.Y. 1990) ("The only proper ground on which a party may move to reargue an unambiguous order is that the court overlooked 'matters or controlling decisions' which, had they been considered, might reasonably have altered the result reached by the court."); Adams v. United States, 686 F. Supp. 417, 418 (S.D.N.Y. 1988) (same)). "The provision for reargument is not designed to allow wasteful repetition of arguments already briefed, considered and decided[,]" Schonberger, 742 F. Supp. at 109 (citations omitted)), and "a motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided." Shrader, 70 F.3d at 257.

## II. Asserted Grounds for Motion

Defendants assert that the Court made the following "errors of law" in its March 11, 2019 Decision and Order denying summary judgment: (1) considering the Affidavit of Donald Carpenter ("Carpenter") dated October 30, 2018 ("Carpenter Affidavit") (Dkt #42-3) with regard to Plaintiff's investigation of and negotiations regarding a parcel ("Location 19" or "the Schuver property") owned by George Barton Schuver, Jr. ("Schuver"); (2) considering the October 30, 2018 Affidavit of Eric Wong ("2nd Wong Affidavit") (Dkt #42-4) regarding the ability to collocate a telecommunications tower on light poles at the Jamestown School District Sports Complex ("Sports Complex"); and (3) considering the Town's negative determination under the New York State Environmental Quality Review Act ("SEQRA"), N.Y. Envtl. Conserv. Law § 8-0109, et seq., as evidence that Plaintiff's proposal was the least intrusive means to close a wireless coverage gap in the Town of Kiantone. Defendants argue that the Court considered evidence that was not before the Board, or actually relied on by the Board, when it arrived at its Resolution denying Plaintiff's Application.

Plaintiff counters that neither the Carpenter Affidavit nor the 2nd Wong Affidavit introduced information that was outside the record of what was considered by the Board—in other words, the substance of the these two affidavits was already before the Board

through Wong's and Carpenter's statements made at the various Board meetings leading up to the Resolution. In addition, Plaintiff argues, the Board's findings with regard to the alleged failure to properly investigate other sites are unsupported by substantial evidence, even without considering the Carpenter Affidavit and 2nd Wong Affidavit. As to the Town's negative SEQRA determination, Plaintiff argues that it was relevant to demonstrating the lack of substantial evidence supporting the Town's assertion of generalized concerns about the siting of the proposed tower.

**III. Analysis**

As discussed further below, the Court concludes that reconsideration is not warranted because none of grounds raised by Defendants in their motion "might reasonably be expected to alter the conclusion reached by the court[,]" Shrader, 70 F.3d at 257, that the Board's Resolution is unsupported by substantial evidence. Even without considering the Carpenter Affidavit, the 2nd Wong Affidavit, or the negative SEQRA determination, there is no genuine issue of material fact that Defendants' denial of the Application was <u>not</u> based on substantial evidence, and therefore Defendants did not establish their entitlement to summary judgment.

**A. Substantial Evidence Standard**

Substantial evidence "has been construed to mean less than a preponderance, but more than a scintilla." Cellular Tel. Co. v. Town of Oyster Bay, 166 F.3d 490, 494 (2d Cir. 1999). As the

-7-

Supreme Court has explained, substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Universal Camera v. NLRB, 340 U.S. 474, 477 (1951) (internal quotations omitted). While deferential, the substantial evidence standard nevertheless demands that "the record . . . be viewed in its entirety, including evidence opposed to the Town's view." Town of Oyster Bay, 166 F.3d at 494 (citing Am. Textile Mfr. Inst., Inc. v. Donovan, 452 U.S. 490, 523 (1981)).

### B. The Board's Finding that Plaintiff Did Not Properly Investigate Alternative Sites (the Schuver Property and the Sports Complex) Is Unsupported by Substantial Evidence

#### 1. The Finding Regarding the Schuver Property Is Unsupported by Substantial Evidence Even Without the Carpenter Affidavit

According to Defendants, Plaintiff failed to adequately investigate other potentially viable sites for constructing a new tower or placing an antenna. In particular, Defendants fault Plaintiff for failing to engage in good faith negotiations with Schuver, the owner of the property identified as Location 19 in Plaintiff's Supplemental Site Selection and Justification Report. In the Resolution, the Board stated

> Mr. Schuver also advised the Board that, <u>in his opinion</u>, Up State was not willing to negotiate in good faith, as Up State already had a very attractive agreement with the owner of the proposed site at 1710 Foote Avenue, which was an objectionable site . . . .

Resolution at 14 (Dkt #39-3, p. 14 of 15) (emphasis supplied). Mere opinion, untethered to any record support, does not constitute substantial evidence. See Hyundai Heavy Indus. Co. v. United States, 393 F. Supp.3d 1293, 1308 n. 19 (Ct. Int'l Trade 2019) ("ABB insists that '[r]ecord evidence shows that the OAF is a direct reflection of the negotiation and assignment of costs and revenues between HICO [America] and the U.S. customer.' . . . The 'evidence' to which ABB cites is Commerce's Issues and Decision Memorandum, which, in itself and without record support (as is the case here), does not constitute substantial evidence.").

Here, not only is the opinion offered by a party with a pecuniary interest in the matter, it is premised on speculation. The Court cannot find that it is "such evidence as a reasonable mind might accept as adequate to support [the] conclusion" that Plaintiff did not conduct its investigation of alternative sites or negotiate with Schuver in good faith. Moreover, Schuver's statements at the December 10, 2015 Board meeting imply that it was he who terminated negotiations with Plaintiff. See December 10, 2015 Meeting Minutes at 3 (Dkt #39-10, p. 3 of 4) ("Mr. Burt Shuver [sic], land owner that had been in talks with Blue Wireless regarding the placement of the tower on his property added comments regarding financial matters with Blue Wireless . . . and that he hasn't 'closed the door' to Blue Wireless.").

The Board further asserted, in regard to the Schuver property, that

> <u>Up State did not present to the Board any evidence from which the Board conclude that Up State was making a reasonable effort to locate on the less intrusive Schuver property</u>. Up State cannot simply prefer its business interests over the interests of the residents of the Town of Kiantone. Up State has an obligation to negotiate in good faith and pay a reasonable amount for the less intrusive site if one is available.

Resolution at 14 (Dkt #39-3, p. 14 of 15) (emphasis supplied). This rationale offered by the Board reflects a misunderstanding of the applicable legal principles and is not based on substantial evidence.

"A plaintiff need not evaluate every potential alternative in order to demonstrate that its proposal meets the least restrictive means test." <u>New York SMSA Ltd. P'ship v. Town of Oyster Bay</u>, No. 11-CV-3077 MKB, 2013 WL 4495183, at *18 (E.D.N.Y. Aug. 16, 2013) (citing <u>New York SMSA Ltd. P'ship v. Vill. of Floral Park Bd. of Trustees</u>, 812 F. Supp.2d 143, 165 (E.D.N.Y. 2011) (rejecting board's argument that "substantial evidence supported its denial because [wireless provider]'s failure to present affirmative evidence about why the Verizon Building was <u>not</u> a viable alternative demonstrated that it did not diligently examine alternative sites" since "there is no requirement in the Code that [wireless provider] evaluate every potential location where the [wireless tower] hypothetically could be constructed, and submit evidence showing why each site is not a viable alternative")

(emphasis in original). "The law only requires a plaintiff to engage in 'a good faith effort to evaluate alternative sites.'" Town of Oyster Bay, 2013 WL 4495183, at *18 (quoting Vill. of Floral Park Bd. of Trs., 812 F. Supp.2d at 165 ("Although the Board questioned why [wireless provider] did not spend a 'million dollars' trying to change the minds of these property owners rather than seeking a special use permit for the Property, the Board did not present any evidence that either of these sites were feasible substitutes"); citations omitted).

In contrast to the Board's finding regarding Plaintiff's evaluation of the Schuver property—which relies solely on the unsupported opinion of Schuver himself—the record contains ample evidence demonstrating that Plaintiff engaged in a good faith effort to investigate alternative sites. As the Court explained in its March 11, 2019 Decision and Order,

> In its initial Site Selection and Justification Report, submitted along with its Application, Plaintiff evaluated nine commercial properties along Foote Avenue. To determine each site's viability, Plaintiff looked at whether the site could provide reliable service to remedy Blue Wireless' coverage gap, the land uses surrounding the site, the presence of natural features that could act as a buffer, the capability of constructing a tower on the site, and Plaintiff's ability to obtain a legal interest in the property. Plaintiff found that, within the search ring, there were no towers or tall structures on which Blue Wireless might collocate its antennas. See Wong Aff. ¶ 20. The Town was informed of Plaintiff's conclusion on this point at the public hearings addressing the Application. Id.
>
> The Board then asked Plaintiff to evaluate additional products within a three-mile search ring around the

proposed site on Foote Avenue. Defendants requested that Plaintiff evaluate additional properties that were not properly zoned—and which would have accordingly required another variance under the TKTFL. Plaintiff assessed ten additional properties, predominantly in the B-1 and B-2 (commercial) zoning districts. Plaintiff also assessed three sites that were not commercially zoned. On December 10, 2015, Plaintiff submitted its Supplemental Site Selection Justification Report ("SSSJR"), Am. Compl., Ex. 19 (Dkt #24-2) & Ex. 20 (Dkt #24-3), setting forth all the sites it had evaluated to date.

In the SSSJR Plaintiff explained in detail its rationale for declining to assess properties that were not properly zoned or had existing residential uses and would in turn require another variance. Plaintiff cited TKTFL § 29.9(A) which states that the Board "shall allow siting of new towers only in commercial areas." In addition, Plaintiff cited TKTFL § 29.6(B), which provides that "[n]o new towers shall be allowed within a residential zoning district, or within 250 feet of the boundary of a residential zoning district." Plaintiff also noted that the TKTFL contained a 500-foot tower setback requirement from any public roadway. For each of the possible locations, Plaintiff concluded that, based on a 180-foot radius representing the full tower height setback, and a 280-foot radius representing the additional 100 feet for the fall-down zone as required by TKTFL § 29.8(F), none of the 19 lots in the search area would accommodate these distances. See SSSJR at 1 (Am. Compl., Ex. 20 (Dkt #24-3)).

Defendants, however, focused on Plaintiff's purported "fail[ure] to follow the Town Planning Board recommendations" "to explore options that would be less intrusive, even if the site was not located in a Business Zoning District." Resolution at 14. The Court questions the reasonableness of the Board's demand that Plaintiff explore locations where the placement of wireless facilities is expressly forbidden by the Town's zoning law, given that Plaintiff's pending application for a site within the proper zoning district already required six variances, see Resolution at 4-5, which the Board found too intrusive of the Town's zoning. Moreover, Plaintiff did explore three sites that were in non-commercially zoned districts but found them unsuitable, as set forth in the SSSJR. The Resolution did not substantively contest the reasons identified by Plaintiff

-12-

> in the SSSJR but instead offered non-substantive, minor
> criticisms, such as that the maps and drawings were not
> in the same scale. These criticisms were effectively
> rebutted by Plaintiff in its opposition to the pending
> summary judgment motion. See Pl.'s Mem. at 19-22
> (citations to record omitted). After reviewing the record
> as a whole, the Court is compelled to conclude that the
> Board's rejection of Plaintiff's application for failing
> to investigate alternative sites or follow the Board's
> recommendations was not supported by substantial
> evidence.

March 11, 2019 Decision and Order at 17-19 (Dkt #46) (emphases in original).

In addition, Plaintiff indicated in the SSSJR that, for the alternative sites evaluated, either suitable lease terms could not be reached with the property owners, or the owners did not respond to the proposed leases sent to them, or the owners decided not to pursue entering into a lease. With particular regard to Location 19, the Schuver property, Plaintiff noted that "[a]fter extended discussions with the property owner, acceptable lease terms could not be reached." SSSJR at 44 (Dkt #24-2, p. 45 of 48).

The Court has no difficulty concluding that the Board's finding with regard to Plaintiff's evaluation of the Schuver property was not supported by substantial evidence. See New York SMSA L.P. v. Town of Oyster Bay Zoning Bd. of Appeals, No. 08-CV-4833 JS AKT, 2010 WL 3937277, at *6 (E.D.N.Y. Sept. 30, 2010) (finding that wireless carrier met its burden of investigating alternatives and presented credible evidence regarding the infeasibility of the sites where carrier offered "good-faith

-13-

justifications for why all other sites . . . would not substitute for the Property" including the fact that one alternative site wanted the ability to terminate the agreement without cause); New York SMSA Ltd. P'ship v. Inc. Vill. of Mineola, No. 01-CV-8211(JS)(WDW), 2003 WL 25787525, at *9 (E.D.N.Y. Mar. 26, 2003) (finding the expert's testimony that an alternative site was "disinterest[ed]" was sufficient to find that it was not a feasible alternative, especially when "[t]he [b]oard did not request any additional evidence from either [the expert] or Verizon regarding the availability of the site throughout the two public hearings"). The Board's conclusion to the contrary was not based on substantial evidence, even without consideration of the Carpenter Affidavit.

### 2. The Finding Regarding Collocation on the Light Poles at the Jamestown School District Sports Complex Is Unsupported by Substantial Evidence Even Without the 2nd Wong Affidavit

The Board also denied Plaintiff's Application based on Plaintiff's purported failure to investigate collocating its antennas on an existing light pole at the Sports Complex, as suggested by the Town's consultant, Richard Comi. Defendants noted that "Up State's own RF Engineer, Mr. Wong, . . . indicated at the December 10, 2015 hearing that the gap in coverage could be solved by placing an antenna on a light pole if of proper height and if the pole could hold the equipment." Resolution at 14 (Dkt #39-3, p. 14 of 15). The Board stated that the "light poles on the football field are located at an elevation of 130' to 150' higher

than the proposed site" and the "Sports Complex is located approximately 1/4 of a mile from the proposed site." Id. From this, the Board reasoned that the light poles at the Sports Complex were viable sites and proceeded to fault Plaintiff for

> fail[ing] to make contact with the school. The Board had also been informally advised that the school district would be interested in talking about a lease with Up State. The Board also advised Up State of the school district's willingness to discuss the situation.

Id.

The Board's assertion that the light poles at the Jamestown School District Sports Complex were viable alternative sites is not based on substantial evidence inasmuch as it relies on an overstatement of comments by Wong, Plaintiff's radio frequency ("RF") engineer, at the December 10, 2015 Board meeting. In contrast to what the Board assumed to be true in its Resolution, Wong did <u>not</u> say that it would in fact be feasible to collocate Blue Wireless's tower on the light poles at the Jamestown School District Sports Complex, let alone any particular light poles or pole-like structures:

> Question was also raised about the possibility of placement on <u>telephone poles</u>. Response from "Eric" [Wong] that this <u>could</u> work <u>if</u> proper height and <u>if</u> poles can hold equipment.

December 10, 2015 Board Meeting Minutes at 3 (Dkt #39-10, p. 3 of 4) (emphases supplied). There is no evidence in the record that the light poles were the proper height and could support the necessary equipment.

Moreover, there is no evidence to support the Board's assumption that light poles were located in a place that would provide adequate wireless coverage. In connection with its Application, Plaintiff submitted documentation regarding the "search ring" it created to identify the radius in which a potential tower would have to be located in order to meet the coverage objectives. Affidavit of Eric Wong ("1st Wong Affidavit") (Dkt #1-6) ¶ 6 (citing Ex. 4E (search ring map). Wong explained that "[s]iting a tower outside of the search ring would result in a coverage gap between the existing Blue Wireless antennas and would reduce coverage to the target areas." Id. Within the search ring, there were no existing towers or other structures on which to collocate a tower. See Plaintiff's Letter of Intent dated July 30, 2015 (Exhibit 4 to Application) (Dkt #1-1), pp. 3, 6, 10. Plaintiff indicates, and Defendants do not dispute, that the Sports Complex is outside of the search ring. See Plaintiff's Memorandum of Law (Dkt #42) at 21 (citing 1st Wong Affidavit (Dkt #1-6)). In fact, the Sports Complex property is as far north as the existing tower at 839 Foote Street where Blue Wireless previously had collocated. Plaintiff's Memorandum of Law (Dkt #42) at 21 (citing 1st Wong Affidavit (Dkt #1-6)). However, as the Board was made aware in connection with Plaintiff's Application, "the Blue Wireless antennas were removed [from that tower] because the site did not fit with the Blue Wireless network design, and the existing tower

at 839 Foote Avenue resulted in too much overlap with another Blue Wireless site in the City of Jamestown and did not cover the targeted areas in the Town of Kiantone." 1st Wong Affidavit (Dkt #1-6) ¶ 9.

At most, Plaintiff's RF engineer acknowledged that <u>some</u> level of service <u>theoretically</u> could be obtained by collocating on a light pole <u>if</u> it was structurally capable of supporting the tower and <u>if</u> had the required height to provide reliable service. "The conceptual, theoretical and/or hypothetical does not constitute substantial evidence." <u>Lehigh Valley Farmers v. Block</u>, 640 F. Supp. 1497, 1512 (E.D. Pa. 1986), <u>aff'd</u>, 829 F.2d 409 (3d Cir. 1987). The Board's conclusion that the light poles at the Sports Complex were viable location, and that Plaintiff failed to properly investigate them, is not based on substantial evidence, even without consideration of the 2nd Wong Affidavit.

### 3. Consideration of the Negative SEQRA Determination Was Proper

Defendants criticize the Court for considering the Town's negative SEQRA Declaration[2] in its March 11, 2019 Decision and Order. Defendants assert that it was not competent evidence to establish that Plaintiff's Proposed Site was the least intrusive means to close a wireless coverage gap in the Town; rather, it only meant that the Proposed Site will result in no significant adverse

---

[2] The SEQRA Declaration was submitted by Plaintiff as Exhibit A to the Declaration of Jon Devendorf, Esq. ("Devendorf Decl.") (Dkt #42-2).

impacts on the environment so as to excuse Plaintiff from preparing an environmental impact statement.

Under New York law, "[w]hen weighing the extent of intrusion of a proposed facility, the municipality may consider, among other things, the aesthetic impact of a facility." Site Acquisitions, Inc. v. Town of New Scotland, 2 A.D.3d 1135, 770 N.Y.S.2d 157, 160 (3d Dep't 2003). However, a "few generalized expressions of concern" by residents with respect to aesthetics or visual impact "cannot serve as substantial evidence on which the [the municipality] could base the denials." Town of Oyster Bay, 166 F.3d at 496. In other words, there must be "more than a scintilla of evidence before the Board on the negative visual impact of the cell sites." Id. at 495 (citation and internal quotation marks omitted).

Defendants' argument about the irrelevance of the negative SEQRA review is unfounded, particularly since the Board asserted in its Resolution that the Proposed Site would be "intrusive" to the community and "is going to cause numerous zoning problems." Here, in the SEQRA review, the Board evaluated and discussed each of the factors to be considered relative to potential environmental impacts. These factors included an entire section on "Impact on Aesthetic Resources," which considered factors such as whether the proposed action may be visible from any designated scenic or aesthetic resource, obstruct or eliminate scenic views, be visible from publicly accessible vantage points, be seen during travel or

recreational or tourism based activities, and diminish the public's enjoyment and appreciation of a designated aesthetic resource. See SEQRA Declaration, p. 6 of 10, Devendorf Decl., Ex. A (Dkt #42-2, p. 25 of 33). The Board determined that "[n]o, or small impact may occur." Id. The SEQRA evaluation also considered the "Impact on Open Space and Recreation" and concluded there would be no impact. See id., p. 7 of 10. Moreover, the Board also considered the Proposed Site's "Consistency with Community Plans" and "Consistency with Community Character" and found that it was consistent both with adopted land use plans and community character; the Board found no impacts on either of these areas. Id., p. 9 of 10 (Dkt #42-2, p. 29 of 33). The negative SEQRA declaration thus certainly was relevant to rebut Defendants' conclusory and general assertions about intrusiveness of the Proposed Site and demonstrate that they were not supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, Defendants' First Motion for Reconsideration (Dkt #49) is denied, and the Court adheres to its March 11, 2019 Decision and Order (Dkt #46) denying Defendants' Second Motion for Summary Judgment.

**SO ORDERED.**

**S/Michael A. Telesca**

HON. MICHAEL A. TELESCA
United States District Judge

Dated:   November 26, 2019
         Rochester, New York.

-19-